**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| CHRIS ANN JAYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV420-321 |
| | ) | |
| WILLIAM BARR, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, Chris Ann Jaye, appearing *pro se*, has filed a Complaint alleging a conspiracy of judicial and prosecutorial misconduct of which she is the victim. This Complaint and its accompanying motions and letters are one component of a larger, multiyear campaign of vexatious and abusive litigation brought by Jaye in various state and federal courts. For the following reasons, the Court **RECOMMENDS** that this case be **DISMISSED** and that filing restrictions be **IMPOSED**.

## I.    Background

The history of this case is long and cumbersome. Though the claims before the Court largely relate to the perceived mishandling of a case in the Northern District of Iowa, a review Jaye's complete litigation history

is needed for context.  Over the last decade, she has filed dozens of cases and appeals before state and federal courts.[1]  The majority, if not all, of these case are the progeny of New Jersey state court cases concerning a dispute with her condominium association, the probate of her father's estate, and the foreclosure on a home.  *See Jaye v. Grewal, et al.*, CV2:21-1566, doc. 1 at 1 (D.N.J. Apr. 5, 2021) ("This matter arises from a condominium dispute that has since developed into multiple actions, state and federal, involving dozens of defendants. . . . There was later a foreclosure on [Jaye's] unit"); *see also, e.g., Jaye v. Grewal, et al.*, CV6:21-048 (E.D. Tex. Jan. 28, 2021) (alleging conspiracy, racketeering, and fraud relating to a New Jersey state court probate case); *Jaye v. Hoffman,*

---

[1] At the time of this Report and Recommendation, the Court is aware of 29 federal cases and appeals filed by Jaye.  Specific cases are identified and discussed below. The Court takes judicial notice of the records discussed below, pursuant to Fed. R. Evid. 201(b).  *See, e.g.,* 21B Kenneth W. Graham, Jr. Federal Practice & Procedure Evidence § 5106.4 (2d ed. 2021) ("Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action, granting a motion, or finding a fact.  Courts can properly notice prior judicial acts for the purpose of acting upon them."); *see also, e.g., Green v. Nottingham*, 90 F.3d 415, 418 (10th Cir. 1996) (taking judicial notice that a plaintiff "has had three actions or appeals in courts of the United States dismissed as frivolous or malicious."); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue [Cit.]  These principles indicate that we [*i.e.* the Court of Appeals] clearly have the power to take judicial notice of [the litigant's] extensive record of litigation as well as the subject matter of his lawsuits.").

*et al.*, CV1:16-7771 (D.N.J. Oct. 24, 2016) (suit brought against multiple state and federal judges objecting to the handling of her prior cases); *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n., Inc. , et al.*, CV1:15-8324 (D.N.J. Nov. 30, 2015) (suit arising from multiple New Jersey state court actions and accusing defense counsel in those cases of criminal violations, including racketeering); *Jaye v. Hoffman, et al.*, CV1:14-7471 (D.N.J. Dec. 2, 2014) (challenge to New Jersey statutes arising from a New Jersey state court judgment and award of attorney's fees against Jaye for non-payment of condominium fees).  Following adverse decisions in these cases, Jaye began a protracted series of appeals and new litigation, challenging the legality of the courts' ruling and suing anyone even remotely involved in the cases.

## A. District of New Jersey

Responding to what appears to be her dissatisfaction with the outcome of state court cases, Jaye began filing actions in the federal courts, beginning with four cases in the District of New Jersey.  The first of which was filed in December 2014 against the New Jersey Attorney General and Deputy Attorney General, four state judges, and three state court employees. *Jaye v. Hoffman, et al.*, CV1:14-7471 (D.N.J. Dec. 2,

2014).   Jaye alleged that various forms of judicial misconduct and an unwillingness of prosecutors to investigate perceived illegal acts deprived her of lawful rights and access to justice.   *Id.*, doc. 34 (Jan. 13, 2016) (second amended compliant).   Her dissatisfaction with the case led her to submit letters to the presiding judge and chief judge of the District asking for the case to be supervised.[2]  *Id.*, doc. 38 (Feb. 4, 2016); *Id.*, doc. 39 (Feb. 4, 2016).   The case was dismissed with prejudice as the court found that the pleadings were replete with unsupported, conclusory allegations and were barred by the *Rooker-Feldman* abstention doctrine.   *Id.*, doc. 64 (May 25, 2016).[3]

---

[2] The letter generally complained of "intentional errors" and that the court had not granted her stay of state court proceedings, despite a year having elapsed since the case was filed.   *Jaye v. Hoffman, et al.*, CV1:14-7471, doc. 38 (D.N.J. Feb. 4, 2016). She also alleged unfair treatment, pointing to defendant's motion for an extension being granted within one day of filing.   *Id.*   The extension was granted by Clerk's Order, as is permitted, as a matter of course, by the rules of that court.   *See* L.R. D.N.J. 6.1(b) (permitting to Clerk of Court to grant a single extension to the deadline for a responsive pleading).   In response to these complaints, the magistrate judge assigned to the case entered an order advising Jaye of the status of her case and the next steps.   *Jaye v. Hoffman, et al.*, CV1:14-7471, doc. 40 (D.N.J. Feb. 10, 2016).

[3] Jaye filed two appeals with the Third Circuit.   *Jaye v. Attorney General New Jersey, et al.*, No. 16-2641 (3d Cir. May 20, 2016); *Jaye v. Attorney General New Jersey*, No. 18-2186 (3d Cir. Jun. 4, 2018).   The district court's judgment was affirmed in both appeals.   *Jaye v. Attorney General New Jersey, et al.*, No. 16-2641 (3d Cir. Aug. 22, 2017) (affirming judgment); *Jaye v. Attorney General New Jersey*, No. 18-2086 (3d Cir. Jan. 14, 2019) (dismissing for failure to pay fees).   Jaye also unsuccessfully sought relief from the Supreme Court.   *In re: Jaye*, No. 17-738 (Jan 22, 2018) (petition for mandamus denied); *Jaye v. Porrino*, No. 17-739 (Jan 22, 2018) (certiorari denied).

In November 2015, Jaye filed a second suit in the District of New
Jersey against 39 named defendants alleging fraud and racketeering
related to her condominium.   *Jaye v. Oak Knoll Vill. Condo. Owners
Ass'n., Inc.*, CV1:15-8324, doc. 1 (D.N.J. Nov. 30, 2016) (complaint); *id.*,
doc. 111 (Mar. 18, 2016) (amended complaint).   As in her prior case, Jaye
sent multiple letters to the court disparaging the administration of the
case and opposing counsel.   *See e.g., id.*, doc. 94 (Feb. 29, 2016) (letter to
chief judge complaining of perceived denials of rights); *id.*, doc. 165 (May
5, 2016) (referring to opposing party and attorney as "deviant, a fool and
a moron" and accusing the New Jersey judiciary of showing favoritism
toward counsel).   The court dismissed the case with prejudice on
defendants' motion.[4]   *Id.*, doc. 306 (Nov. 30, 2016) (order granting motion
to dismiss).   The district court denied plaintiff an opportunity to file a
second amended complaint, in part, due to her pattern of filing cases
based on the same core set of facts and adding attorneys, law firms, and

---

[4] Jaye filed three unsuccessful appeals in the case.  *Jaye v. Oak Knoll Vill. Condo.
Ass'n, et al.*, No 16-2515 (3d. Cir May 20, 2016) *cert denied* ___ U.S. ___, 137 S. Ct.
511 (Mem.) (Nov. 28, 2016); *Jaye v. Oak Knoll Vill. Condo. Ass'n, et al.*, No 17-2564
(3d Cir. Jul. 24, 2017) *cert denied* ___ U.S. ___, 140 S. Ct. 46 (Mem.) (Oct. 7, 2019);
*Jaye v. Oak Knoll Vill. Condo. Ass'n, et al.*, No 18-2187 (Jun. 4, 2018), *cert. denied* ___
U.S. ___, 149 S. Ct 2741 (Mem.) (May 4, 2020).

judges whom she believes to be responsible for prior adverse decisions. *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, CV1:15-8324, doc. 305 (D.N.J. Nov. 30, 2016) (memorandum opinion).

In October 2016, Jaye filed her third case in the District of New Jersey against 37 named defendants, many of whom were named in her 2014 case. *Jaye v. Hoffman, et al.*, CV1:16-7771, doc. 1 (D.N.J. Oct. 24, 2016) (complaint); *id*. doc. 86 (Sep. 21, 2017) (amended complaint). The complaint made general allegations that the defendants violated federal and New Jersey civil rights statutes.  *Id*., doc. 1 (Oct. 24, 2016) (complaint).  The claims against all but one defendant were dismissed under the doctrines of *res judicata*, immunity, and privilege. *Id*., doc. 81 (Aug. 9, 2017) (order).  Jaye attempted to amend her complaint to add 22 new defendants and to raise allegations of racketeering and violations of the Fair Debt Collection Practices Act. *Id*., doc. 86 (Sep. 21, 2017).  The proposed amendment was stricken as leave was not granted before filing. *Id*., doc. 100 (Nov. 9, 2017) (order striking first amended complaint).  In dismissing the remaining defendant based on judicial immunity, the court also noted that the proposed amendment would have been futile, as it failed to address any of the defects previously identified by the court,

instead providing only "generalized, sweeping allegations." *Id.*, doc. 110 (Mar. 28, 2018) (opinion).

During the case, Jaye filed two motions for injunctive relief requesting that the federal courts discharge liens against her property and halt a state foreclosure action. *Id.*, doc. 3 (Nov. 8, 2016); *id.*, doc. 39 (Apr. 17, 2017). Both motions were denied for plaintiff's failure to demonstrate irreparable harm that could not be corrected through a monetary award. *Id.*, doc. 7 (Nov. 21, 2016); *id.*, doc. 49 (May 2, 2017). Jaye appealed to the Third Circuit, which affirmed the denial. *Jaye v. Hoffman, et al.*, No. 17-2231 (3d. Cir. Mar. 19, 2018); *Jaye v. Hoffman, et al.*, No. 17-2321 (3d. Cir. Jul. 12, 2017) (dismissed for non-payment).

Following the closing of the case, Jaye filed several motions seeking to reopen the case, alter the court's decision, remove the presiding district judge, and appoint a three-judge panel to consider any pending motions. *Jaye v. Hoffman, et al.*, CV1:16-7771, doc. 113 (D.N.J. Apr. 9, 2018) (motion for reconsideration); *id.*, doc. 114 (Apr. 9, 2018) (motion for recusal); *id.*, doc. 115 (Apr. 9, 2018) (letter requesting a three-person panel); *id.*, doc. 118 (Apr. 26, 2018) (motion to make findings of fact); *id.*, doc. 119 (Apr. 26, 2018) (motion to reopen case and demand to correct

record).  The court directed defendants that they were not obligated to file responses to the motions, *id.*, doc. 116 (Apr. 9, 2018) (order), which were denied.  *Id.*, doc. 120 (May 18, 2018) (order denying post-closing motions).  Jaye also sent another insulting letter to the presiding judge, accusing him of unlawful acts.  *Id.*, doc. 117 (Apr. 26, 2018) (letter to judge).  She later filed additional motions requesting that the presiding judge recuse himself, all of his orders be vacated, and she be granted her requested relief in the case.  *Id.*, doc. 22 (Jun. 27, 2018) (motion to vacate orders); *id.*, doc. 123 (Oct. 24, 2018) (motion for relief from judgment). These motions were again denied.  *Id.*, doc. 125 (Dec. 20, 2018) (opinion denying motions).  Jaye then filed a motion for injunctive relief and a motion to amend and consolidate her complaint with a recently opened case.[5]  *Id.*, doc. 127 (May 20, 2019) (motion for injunctive relief); *id.*, doc. 128 (Jun. 4, 2019) (motion to amend and consolidate).  These motions were denied.  *Id.*, doc. 130 (Dec. 16, 2019).

In July 2017, Jaye filed her fourth case in the District of New Jersey, naming 45 defendants, many of which were state and federal

---

[5] Jaye sought an to enjoin the District of New Jersey in order to compel the court to reopen her closed cases.  *Jaye v. Hoffman, et al.*, CV1:16-7771, doc. 127 (D.N.J. May 20, 2019) (post-closing motion for injunctive relief).

judges in her prior and then-pending cases. *Jaye v. Shipp, et al.*, CV 1:17-5257, doc. 1 (D.N.J. Jul. 18, 2017). She alleged that the judges engaged in a conspiracy to deny Constitutional and statutory rights. *Id*. She also alleged that other defendants made fraudulent public recordings, committed perjury, and made false court filings. *Id*. Shortly after filing, the court ordered plaintiff to show cause as to why those defendants entitled to judicial immunity should not be dismissed. *Id*., doc. 2 (Jul. 21, 2017). Jaye provided a response to the order, *id*., doc 6 (Jul. 31, 2017); however, the court concluded that she failed to demonstrate how the alleged violations of her rights were more than "fundamental disagreement with previous outcomes in her cases, which are clearly associated with defendants' actions in their official capacities" and dismissed those defendants entitled to immunity. *Id*., doc. 8 (Aug. 18, 2017). The remaining claims were later dismissed under the doctrines of immunity, *res judicata*, abstention, and a finding that Jaye failed to adequately state a claim on which relief could be granted. *Id*., doc. 118 (Mar. 29, 2018). In dismissing the case, the court found Jaye to be an abusive and vexatious litigant and imposed restrictions on her ability to file future cases. *Id*. As in her 2016 case, Jaye filed several post-closing

motions to vacate the judgment and orders of the court. *Id.*, doc. 134 (Jun. 27, 2018) (motion to vacate all orders); *id.*, doc. 135 (Oct. 31, 2018) (motion for relief from judgment and orders); *id.*, doc. 138 (Jun. 4, 2019) (motion for leave to amend and consolidate).

## B. Federal Cases Outside of the District of New Jersey

In August 2018, Jaye filed a complaint with the Court of Federal Claims alleging that the unwillingness of federal courts to invalidate state court judgments or to stay state court proceedings resulted in a taking. *Jaye v. United States*, CV1:18-1200, doc. 1 (Fed. Cl. Aug. 8, 2018) (complaint). She expressly stated that the complaint was not an appeal of another court's judgment. *Id.* The case was dismissed *sua sponte* for lack of subject-matter jurisdiction. *Id.*, doc. 4 (Aug. 24, 2018).

Jaye was undeterred by this dismissal. She first filed a motion seeking to have the dismissal vacated, alleging that the court failed to consider the merits of her claim. *Jaye v. United States*, CV1:18-1200, doc. 8 (Fed. Cl. Dec. 21, 2018) (motion to vacate). The motion was denied. *Id.*, doc. 9 (Dec. 21, 2018) (order). She appealed and the Federal Circuit affirmed the Court of Federal Claims dismissal. *Jaye v. United States*, No. 19-1458, doc. 54 (Fed. Cir. Aug. 6, 2019), *cert denied Jaye v. United*

*States*, 141 S. Ct. 1075 (Mem.) (2021).

On November 4, 2019, plaintiff filed a complaint in the Northern District of Iowa against 46 named defendants, including federal and state attorneys general, court administrative staff, the judges involved in her claim before the Court of Federal Claims and subsequent appeal, and the Clerk of the United States Supreme Court. Doc. 1 at 21; *see Jaye v. Barr, et al.*, CV1:19-121 (N.D. Iowa Nov. 4, 2019). The case was assigned to District Judge Williams and Magistrate Judge Mahoney. *See Jaye v. Barr, et al.*, CV1:19-121 (N.D. Iowa Nov. 4, 2019). At the time of filing, Jaye submitted a letter request to the Court for authorization to use the electronic filing system (ECF). *Id.*, doc. 2 (Nov. 4, 2019) (motion to file electronically). The request was denied, but plaintiff was granted permission to submit filings to the Court via email. Doc. 1 at 21; *Jaye v. Barr, et al.*, CV1:19-121, doc. 3 (N.D. Iowa Nov. 5, 2019).

On December 2, 2019, Jaye filed the first of several motions seeking an injunction to stay pending cases before the New Jersey state courts. *Jaye v. Barr, et al.*, CV1:19-121, doc. 4 (N.D. Iowa Dec. 2, 2019) (motion for emergency stay of state action). Judge Williams denied the motion. *Jaye v. Barr, et al.*, CV1:19-121, doc. 5 (N.D. Iowa Dec. 6, 2019) (order).

On March 18, 2020, Jaye filed an amended complaint, naming more than 20 additional defendants.[6] *Jaye v. Barr, et al.*, CV1:19-121, doc. 23 (N.D. Iowa Mar. 18, 2020).   Charles Howard Nelson and the law firm Ballard Spahr, LLP appeared on behalf of New Jersey state and county defendants, *id.*, doc. 28 (Apr. 21, 2020) (notice of appearance); *id.* at 39 (May 4, 2020) (same); *id.*, doc. 95 (Oct. 19, 2020) (same); *id.*, doc. 138 (Oct. 9, 2020) (same), and filed waivers of service, *id.*, docs. 29–37 (Apr. 21, 2020) (waivers of service); *id.*, doc. 40 (May 4, 2020) (same).   Despite the notices of appearance, plaintiff repeatedly called into question Nelson and Ballard Spahr's capacity to represent defendants and insisted that they provide certifications in excess to what would normally be required.[7] *See, e.g., id.*, doc. 41-1 (May 6, 2020) (requesting signed certifications specifying the scope of Nelson and Ballard Spahr's representation); *id.*,

---

[6] Plaintiff erroneously states that the amendment was filed on March 16, 2020. *Compare* doc. 1 at 10 *with Jaye v. Barr, et al.*, CV1:19-121, doc. 23 (N.D. Iowa Mar. 18, 2020) (dated and docketed on March 18, 2020).

[7] The Local Rules of the Northern District of Iowa require only that an appearing lawyer who did not sign the initial pleadings file a notice of appearance identifying the party or parties that they represent and providing the lawyer's name, law firm, telephone number, facsimile number, and email address.   N.D. Iowa L.R. 83(d)(5). Neither the Federal Rules of Civil Procedure nor the rules of the Northern District of Iowa require an appearing attorney to furnish proof or certification of authority to represent his or her clients.

doc. 132 at 4–5 (questioning Nelson's authority to represent defendants). She filed a motion requesting that Nelson and Ballard Spahr be ordered to file proof of their authority to represent the state and county official defendants in their individual capacity or for the court to declare the parties in default.[8] *Jaye v. Barr, et al.*, CV1:19-121, doc. 72  (N.D. Iowa June 5, 2020).  The motion was denied without detailed explanation. *Jaye v. Barr, et al.*, CV1:19-121, doc. 74 (N.D. Iowa Jun. 9, 2020).

Jaye filed a letter requesting entry of default against 35 federal officials and judges, alleging that they had failed to appear after being properly served.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 53 (N.D. Iowa May 26, 2020).  Williams denied the motion finding that Jaye failed to comply with the requirements of Federal Rule 55 but permitted her an opportunity to correct the defects and refile her motion.[9] *Jaye v. Barr, et*

---

[8] In support of her motion, Jaye attached two pages from the State of New Jersey Department of Law & Public Safety Outside Counsel Guidelines. *Jaye v. Barr, et al.*, CV1:19-121, doc. 72 at 2–4 (N.D. Iowa Jun. 5, 2020) (dated and docketed on March 18, 2020).  Though the document does create a requirement that outside counsel apprise representatives of the New Jersey District Attorney's Office of potential conflicts and describes the relationship between counsel and the employees of represented entities, nothing in the provided text precludes outside counsel from representing public employees or creates a requirement that the authority of counsel be established with the court.

[9] Specifically, Williams found that Jaye failed to establish that the federal employee defendants had been properly served.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 73 (N.D. Iowa June 8, 2020).  Her motion, which was unaccompanied by the required affidavit,

*al.*, CV1:19-121, doc. 73 (N.D. Iowa June 8, 2020).   Shortly after the motion was denied, Schunk appeared on behalf of the United States, doc. 1 at 11.   *Jaye v. Barr, et al.*, CV1:19-121, doc. 77  (N.D. Iowa June 16, 2020), and filed a motion to dismiss "all federal entities or federal employees in their official capacities."[10]  *Jaye v. Barr, et al.*, CV1:19-121, doc. 78  (N.D. Iowa June 16, 2020) (motion to dismiss).   Jaye objected to Shunck's capacity to represent the federal defendants and his motion to dismiss, as neither his notice of appearance nor motion individually named each represented party.[11]  Doc. 1 at 11; *see also Jaye v. Barr, et*

---

stated only that service had been effected on Barr pursuant to "Rule 4(i)(B)" (presumably 4(i)(1)(B)). *Jaye v. Barr, et al.*, CV1:19-121, doc. 53 (N.D. Iowa May 26, 2020). As the defendants are federal employees and officers, not the United States, service must comply with Rules 4(i)(2) and 4(i)(3), each of which requires that the complaint be served upon the individual defendant. Fed. R. Civ. P. 4(i)(2) & (3). Williams also found that Jaye failed to "demonstrate, through argument and evidence, that her claim against the federal defendants is founded," as required by Rule 55(d). *Jaye v. Barr, et al.*, CV1:19-121, doc. 73 (N.D. Iowa June 8, 2020). Jaye later argued that personal service would have been impossible due to the restrictions of COVID-19. *Jaye v. Barr, et al.*, CV1:19-121, doc. 110 (N.D. Iowa Sep. 1, 2020).

[10] Shunck acknowledged that he lacked the capacity to represent the defendants in their individual capacities at the time of filing his motion. *Jaye v. Barr, et al.*, CV1:19-121, doc. 78 (N.D. Iowa Jun. 16, 2020).

[11] Jaye based her objection, at least in part, on the understanding that Rule 17 requires the naming of each defendant. Doc. 1 at 11; *Jaye v. Barr, et al.*, CV1:19-121, doc. 156 (N.D. Iowa Dec. 8, 2020). This is an incorrect understanding. Rule 17 pertains to the capacity to sue and to be sued. Fed. R. Civ. P. 17. It does not impose requirements on the appearance of counsel or the filing of motions.

*al.*, CV1:19-121, doc. 156  (N.D. Iowa Dec. 8, 2020) (objection to Shunck's ability to file documents); *id.*, doc. 157 (Dec. 8, 2020) (objection to Shunck's ability to file documents); *id.*, doc. 83  (Jun. 30, 2020) (response to motion to dismiss).   These objections were not resolved by Judge Williams prior to the conclusion of the case.

On May 13, 2020, plaintiff sent to the Court a letter that Judge Williams deemed to be threatening, insulting, and vulgar.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 46  (N.D. Iowa May 13, 2020) (letter); *id.* doc 52 (May 15, 2020) (order to show cause).  Williams considered the following passage of particular relevance:

> I know not how many Ruby Ridges, Bundy Stand-Offs and WACO showdowns it will take for you to understand that people will not simply let the government dictate the lives, property and the liberty of others via corrupt court rulings and no due process judges who think they are out of reach of the law they break, but like those suffered souls—I am reaching a dangerous point of no return When the government fails to give the people its right to peaceful First Amendment remedies by the law through the usurpation, lies and manipulation of tyrannical, corrupt, unelected judges, I have a right to defend myself.  I have a right to defend what is mine.  If this cannot be done in a court of law because no court exists and it is not being done by those hired to uphold the law as per theft of my property, it will be done outside of the courts . . .  Whatever I may choose to do outside a court of law to protect my rights could have been avoided in a court of law.  Lord knows, there are enough records to prove this— which includes endless filings with the US DOJ, US AG and

> even the US Supreme Court.  And to one and all, I say to them
> "FUCK YOU."   I hope the last two words require no cute
> interpretations from any lawyers.

*Id*. doc. 52 (May 15, 2020) (order to show cause) (quoting *id*. doc 46 (May 13, 2020)).  He found the content of the letter to potentially warrant sanctions under Federal Rule of Civil Procedure 11(b) and ordered Jaye to show cause why such action was not necessary.  *Id*. doc. 52 (May 15, 2020) (order to show cause).

Jaye filed a response to the order to the show cause, in which she criticized the handling of the case by Williams, challenged the validity of his order, and compared him, and the rest of the judiciary, to Nazi despots.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 91  (N.D. Iowa Jul. 24, 2020) (response to order to show cause) ("At what stage did 'your honor' turn into 'mein führer'?").  She also attempted to appeal the show cause order to the Eighth Circuit.  *Jaye v. Barr, et al.*, No. 20-2073 (8th Cir. May 29, 2020) (appeal).  The Eighth Circuit denied her petition for permission for interlocutory appeal.[12]  *Id*. (Jul. 6, 2020) (judgement).

The day following plaintiff's response to the show cause order, state

---

[12] It subsequently denied her petition for rehearing *en banc* or by a panel.  *Jaye v. Barr, et al.*, No. 20-2073 (8th Cir. Jul. 17, 2020).

executive and judicial defendants represented by Nelson filed a motion
to dismiss the complaint pursuant to Federal Rules of Civil Procedure
12(b)(2) (lack of personal jurisdiction) & (3) (improper venue). *Jaye v.
Barr, et al.*, CV1:19-121, doc. 47 (N.D. Iowa May 14, 2020) (motion to
dismiss or transfer and impose pre-filing injunctions). The motion
alternatively sought transfer of the case to a more appropriate venue and
to impose a pre-filing injunction "barring Jaye from any future filings,
however captioned, directly or indirectly related to the payment of her
condominium fees or foreclosure proceedings, or any perceived
conspiracies emanating out of them, without leave of this Court or
representation by a licensed attorney." *Id.* Several of the other
defendants sought to join the motion to dismiss. *Jaye v. Barr, et al.*,
CV1:19-121, doc. 68 (N.D. Iowa Jun. 4, 2020) (joinder of Cassidy, Ciccone,
Dupuis, and Goodzeit, also represented by Nelson); *id.*, doc. 96 (Aug. 19,
2020) (joinder of Albin, Cassidy, Fernandez-Vina, Grewal, Grispin,
Lavecchia, Patterson, Rabner, Ruotolo, Smith, Solomon, and Timpone,
each represented by Nelson); *id.*, doc. 98 (Aug. 18, 2020) (joinder of
Kassis); *id.*, doc. 102 (Aug. 20, 2020) (joinder of Baker); *id.*, doc. 103 (Aug.
20, 2020) (joinder of Brennan); *id.*, doc. 104 (Aug. 20, 2020) (joinder of

Katz); *id*., doc. 105 (Aug. 20, 2020) (joinder of Sauter); *id*., doc. 139 (Oct. 9, 2020) (joinder of Ciarrocca, represented by Nelson); *id*., doc. 154 (Dec. 8, 2020) (joinder of Rowland).   Jaye filed multiple objections to the motion and joinders.  *Id*., doc. 55 (May 28, 2020) (response to motion); *id*., doc. 71 (Jun. 5, 2020) (objection to joinder of Cassidy, Ciccone, Dupuis, and Goodzeit); *id*., doc. 108 (Sep. 1, 2020) (objection to joinder of Albin, Cassidy, Fernandez-Vina, Grewal, Grispin, Lavecchia, Patterson, Rabner, Ruotolo, Smith, Solomon, and Timpone); *id*., doc. 109 (Sep. 1, 2020) (objection to joinder of Baker, Brennan, Katz, Kassis, and Sauter); *id*., doc. 143 (Oct. 9, 2020) (objection to joinder of Ciarrocca).   Jaye also filed a request for sanctions against Nelson for defendants' motion to dismiss and other the filings.[13]  *Id*., doc. 132 (Sep. 24, 2020).; *id*., doc. 158 (Dec. 8, 2020).  The motion to dismiss was ultimately denied as moot.  *See Jaye v. Barr, et al.*, CV1:19-121, doc. 193 (N.D. Iowa Mar. 25, 2021).

The Northern District of Iowa dismissed Jaye's complaint with prejudice pursuant to Federal Rule of Civil Procedure 11 for what the

---

[13] Jaye filed a letter to the Court demeaning the district judge for not granting her request for sanctions.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 158 (N.D. Iowa Dec. 8, 2020).  The court construed this letter as a second motion for sanctions.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 193 at 7 (N.D. Iowa Mar. 25, 2020).

court deemed to be a pattern of abusive and threatening behavior. *Jaye v. Barr, et al.*, CV1:19-121, doc. 193 (N.D. Iowa Mar. 25, 2021) (memorandum and order). Jaye filed a motion for reconsideration and a motion to recuse the judge that issued the dismissal. *Id.*, doc. 195 (Mar. 29, 2021) (motion for reconsideration); *id.*, doc. 196 (Mar. 29, 2021) (motion for recusal). Both were denied. *Id.*, doc. 197 (Mar. 30, 2021) (order). She provided notice to the Court of her intent to appeal the dismissal and imposed sanctions with the Eighth Circuit and Supreme Court.[14] *Id.*, doc. 198 (Mar. 30, 2021) (notice of appeal to the United States Supreme Court); *id.*, doc. 199 (Mar. 30, 2021) (notice of appeal to the Eighth Circuit). Her appeals were denied. *In re Jaye*, 2020 WL 9074459 (8th Cir. Dec. 18, 2020) (judgment denying petition for writ of mandamus) *cert. denied Jaye v. United States District Court for the Northern District of Iowa*, 2021 WL 1240951, __ S. Ct. __ (Apr. 5, 2021), *reh'g denied Jaye v. United States District Court for the Northern District*

---

[14] Following the denial of her appeal, Jaye filed motions with the Eighth Circuit seeking the names of the judges involved in denying her appeal and request for rehearing *en banc. In re: Chris Jaye*, No. 20-3597 (8th Cir. Jan. 20, 2021). The motion was denied. *Id.* (Jan. 21, 2021) (order denying motion). Jaye also filed a motion for injunctive relief and letters with the Eighth Circuit that were returned as unfiled as they were addressed to the United States Supreme Court and a judge of the Eighth Judicial Circuit of Florida, *Id.* (8th Cir. Apr. 13, 2021) (clerk's letter).

*of Iowa*, 2021 WL 1952145, __ S. Ct. __ (May 17, 2021).

Following her case in the Northern District of Iowa, Jaye has filed at least five cases in districts seemingly without connection to the events of her underlying claims. In addition to the two cases filed in this district, she has initiated cases in the Eastern District of Texas, the District of Rhode Island, and the Southern District of New York. *Jaye v. Grewal, et al.*, CV6:21-048 (E.D. Tex. Jan. 28, 2021); *Jaye v. United States, et al.*, CV1:21-169 (D.R.I. Apr. 14, 2021); *Jaye v. Knuckles, Komosinski & Manfro, LLP, et al.*, CV1:21-3435 (S.D.N.Y. Apr. 19, 2021). Each of these cases is predominantly based on arguments previously raised before other courts—her disagreement with the adjudication of her New Jersey state cases and belief that state and federal judges are involved in a racketeering enterprise to deprive her and other *pro se* litigants of an opportunity to litigate. *Jaye v. Grewal, et al.*, CV6:21-048, doc. 1 (E.D. Tex. Jan. 28, 2021); *Jaye v. United States, et al.*, CV1:21-169, doc. 1 (D.R.I. Apr. 14, 2021); *Jaye v. Knuckles, Komosinski & Manfro, LLP, et al.*, CV1:21-3435, doc. 1 (S.D.N.Y. Apr. 19, 2021). Both the Eastern District of Texas and Southern District of New York have transferred her cases to the District of New Jersey, deeming it to be the appropriate

venue.[15]   *Jaye v. Grewal, et al.*, CV6:21-048, doc. 9 (E.D. Tex. Jan. 29, 2021) (transfer order); *Jaye v. Knuckles, Komosinski & Manfro, LLP, et al.*, CV1:21-3435, doc. 8 (S.D.N.Y. May 5, 2021) (transfer order).

## C. History of this Case

Jaye filed the instant complaint in December 2020 against (1) Barr, the then Attorney General of the United States;[16] (2) Shunck, an assistant U.S. attorney in Iowa; (3) Williams, a federal district judge in the Northern District of Iowa; (4) Kugler, a federal district judge in the District of New Jersey; (5) Wolfson, the Chief Judge of the District of New Jersey; (6) Ballard Spahr, LLP, the law firm that represented New Jersey judicial and executive employees in prior litigations; (7) Harris, the Clerk of the United States Supreme Court; (8) Walsh, the clerk of court for the

---

[15] Jaye filed a motion for reconsideration and a motion to appeal the decision of the magistrate judge. *Jaye v. Grewal, et al.*, CV6:21-048, doc. 10 (E.D. Tex. Feb. 12, 2021); *id.*, doc. 12 (Mar. 2, 2021).  Both were denied.  *Id.*, doc. 11 (Feb. 13, 2021) (order denying motion for reconsideration); *id.* (Mar. 3, 2021) (docket text entry denying appeal of magistrate judge's order).

[16] Federal Rule of Civil Procedure 25(d) provides that when a public officer is sued in their official capacity and leaves office, their successor is "automatically substituted as a party."  Fed. R. Civ. P. 25(d).  With the resignation of Barr as United States Attorney General, Acting Attorney General Wilkinson, was substituted as a defendant for official capacity claims against Attorney General Barr.  As Merrick Garland has been appointed and confirmed as United States Attorney General, he has been substituted for Wilkinson.  The Clerk of Court is **DIRECTED** to remove Acting Attorney General Wilkinson as a defendant in this case.

District of New Jersey; (9) Grewal, the New Jersey Attorney General; and (10) 1–100 John Does.[17]  Doc. 1.  In a conclusory manner, the Complaint alleges illegal acts and a pattern of deprivations by federal and state actors of her rights during her prior litigations.  *See, generally id*.  It suggests that federal judges are conspiring with government employees and attorneys and are engaged in a racketeering enterprise.[18]  *Id*. at 10.  In furtherance of this conspiracy, Jaye asserts that judges have adopted an unspoken policy to shield their co-conspirators and themselves from liability for their unlawful conduct.  *Id*. at 2.

Jaye claims that federal judges have regularly disregarded law and precedent in order to stifle her efforts to overturn New Jersey state court judgments and to hold the defendants accountable.  *Id*. at 3–4 & 6.  This has manifested through an unwillingness to grant requested injunctive relief against the New Jersey state courts or to investigate the alleged unlawfulness of those judgments and the laws on which they were based.

---

[17] This case was filed on the Monday following the Eighth Circuit's denial of Jaye's interlocutory appeal of the Northern District of Iowa's order that she show cause as to why sanctions should not be imposed.  *See In re: Jaye*, No. 20-3597 (8th Cir. Dec. 18, 2020).

[18] Jaye suspects, without providing explanation, that federal and state judges have a financial interest in the alleged conspiracy.  Doc. 1 at 4–5.

*Id.* at 3–6.  This perceived disregard for the law resulted in the improper dismissal of Jaye's prior claims and the imposition of inappropriate sanctions.  It also led to simultaneous litigation in both the state and federal courts.  *Id.*  at 9.

She maintains that government defendants and their attorneys have been preferentially treated by federal judges and have *sua sponte* been "gifted protections, immunities, defenses, and dismissal." *Id.* at 5. She also argues that rules and procedures were inequitably applied.  In her view, judges consistently failed to accept the facts of her complaint as true before dismissing her claims.  *Id.* at 4.  Defendants were granted extensions, despite her similar requests being denied.[19]   *Id.* at 7. Government attorneys were permitted to appear and represent defendants in their official and individual capacities without establishing their authority to do so.  *Id.* at 3.  Judges and clerks refused to enter default judgments against defendants when requested.  *Id.* at 7 & 11. She also contends that the unfairness can also be seen in the sanctions that have been imposed on her and the denial of her request to impose

---

[19] *See, supra*, note 2. (discussing a similar claim of unfair treatment regarding the granting of extension in a prior case).

similar sanctions on opposing counsel.

Jaye also alleges that judges "have taken incredulous, impermissible, illegal action against [her] to prevent her from accessing the court, petitioning her government, and holding account rogue state actors who are without any sovereign immunity." *Id.* at 9. She contends that judges have reconstrued, revised, and altered her pleadings and motions. *Id.* at 4. District judges have also usurped control of her case from magistrate judges in order to dispose of her claims.[20] *Id.* at 3. She additionally alleges that in at least on instance, a judge advocated for the position of defendants.[21]   *Id.* at 10.

---

[20] Plaintiff notes that "At some point prior to December 6, 2020, Williams took over the case from the magistrate judge without any order in the record." Doc. 1 at 10. As Williams was the assigned district judge, no order was necessary for him to take any action in the case, regardless of whether a magistrate judge was also assigned. It is logical that the district judge would have entered the December 6, 2020, order as grants of injunctive relief, like that sought by Jaye, are not within the authority of a magistrate judge to grant. *See* 28 U.S.C. § 636(b)(1).

[21] Jaye cites to Judge Williams' order denying requested injunctive relief, in which he applied a four-factor test articulated in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981), requiring the court to weigh "(1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Jaye v. Barr, et al.*, CV1:19-121, doc. 5 (N.D. Iowa Dec. 6, 2019) (order). The potential grounds for dismissal that Jaye contends were improperly provided to defendants were discussed within the court's analysis of plaintiff's likelihood of success on the merits of her claim. The court found that the injunction was not appropriate because the potential injury could likely be resolved through a monetary award and that plaintiff was unlikely to succeed on the merits of the dispute due to several identified abstention

Jaye's further alleges that the restrictions and sanctions which have been imposed by other courts are illegal. She contends that prohibitions on her access to electronic filing were enacted to censor her ability to file. *Id*. at 7. Jaye also argues that Judge Williams' order to show cause, requiring her to provide a reason why sanctions were not appropriate, was not within his authority and violated her Fifth Amendment right against self-incrimination. *Id*. at 8.

On January 19, 2021, Jaye filed a motion for access to the Court's electronic filing system and motions seeking injunctive relief against New Jersey State judges. Docs. 5–7. She also filed a motion for leave to amend her Complaint to add four defendants, which was later withdrawn. Doc. 8; doc. 12. On March 2, 2021, she filed a letter addressed to a judge in the Eastern District of Texas demanding that the US Attorney General's Office open an investigation into the federal and New Jersey state judiciary. Doc. 13.

On February 18, 2021, Assistant United States Attorney Bradford Patrick filed a motion to dismiss and a motion to stay discovery. Doc. 10;

---

doctrines, the immunity of multiple defendants, the likelihood of *res judicata* barring multiple claims, and the inappropriateness of the Northern District of Iowa as a venue. *Jaye v. Barr, et al.*, CV1:19-121, doc. 5 (N.D. Iowa Dec. 6, 2019) (order).

doc. 11.  On June 1, 2021, the New Jersey state defendants and Ballard Spahr, LLP, represented by Christine R. Emello, filed a separate motion to dismiss or, in the alternative, to transfer this case to the District of New Jersey.[22]  Doc. 36.  Jaye's response to the federal defendants' motion largely challenged Patrick's authority to file the motions, asserting that government attorneys are not authorized to represent government employees in their individual capacity and that Patrick has not provided proof of his authority.  Doc. 12.  She has not provided a response to the motion to dismiss filed by the New Jersey state defendants.[23]

As in her prior cases, Jaye has also filed numerous letters with the Court, complaining of the handling of this case.[24]  She has objected to how

---

[22] Emello filed Notices of Appearance on behalf of more than 30 potential defendants. Doc. 17; doc. 31; doc. 34; doc. 38.  At this time, only Ballard Spahr, LLP, Grewal, Rabner, Ciarrocca, Mega, and Cassidy are named defendants in this case.  *See infra*, p. 50–53.

[23] Pursuant to the Court's rules, Jaye may file a response to the second motion to dismiss within 14 days of service.  S.D. Ga L.R. 7.5.  As the arguments raised in the second motion are redundant to those offered in support of the prior motion to dismiss and dismissal is appropriate for other independent reasons, the Court need not belabor the issue by waiting out the response deadline.  *Compare* doc. 10 *with* doc. 36.  Jaye may respond to the arguments raised in the second motion to dismiss in her objections to this Report and Recommendation.

[24]  Although the presentation of her prior cases did not emphasize her letter filing, it is plaintiff's pattern to file letters with the Court, sometimes requesting judicial action.  *See, e.g. In re Jaye*, MC1:20-086, doc. 1 (D.N.J. May 20, 2020) (letter to chief judge of district) (requesting that an investigation be conducted into the conduct of three district judges); *Jaye v. Shipp, et al.*, CV1:17-5257, doc. 4 (D.N.J. Aug. 14, 2017)

long the court has taken to resolve her motions, alleging that it is playing games and disregarding the law.  Doc. 16; doc. 23; doc. 32.  She has also complained that the Court has not prevented the United States Attorney from representing government employees in their individual capacities. Doc. 32 at 2–3.[25]

## II.  Dismissal

Jaye is a serial filer before both state and federal courts.  When she is unable to attain her desired relief in one forum, she tries again in another, often drawing into her claims the attorneys and judges that she

---

(*ex parte* letter to judge); *id.*, doc. 11 (Aug. 22, 2017) (letter challenging New Jersey statutes and the rules and practices of the New Jersey courts).  This is inconsistent with the Federal Rules of Civil Procedure, which require such requests to be via motion.  Fed. R. Civ. Pro. 7(b)(1) ("A request for a court order must be made by motion.").  It is presumed that Jaye is aware of this requirement, as she has previously chastised opposing counsel violating this rule.  *See Jaye v. Oak Knoll Vill. Condo.,* CV1:17-2187 (3d Cir. Nov. 27, 2018) ("[T]hank you for finally grasping the concept that you (YES, EVEN You!!!) are required to file a motion when you want relief.  It is incredible that you actually have learned that this is required . . . being what a complete and total illegal, criminal ass that you are.").  Regardless of the formal requirement, the Northern District of Iowa charitably reconstrued the letter as a motion requesting electronic filing for a *pro se* litigant.  *See Jaye v. Barr, et al.,* CV1:19-121, doc. 3 (N.D. Iowa Nov. 5, 2019).

[25] Jaye has indicated her desire to seek a copy of the semi-annual report produced by the Administrative Office of the Courts identifying any motions pending for more than six months.  Doc. 32 at 5, n. 1.  There is no need to request a formal copy of this report, as it is published to the United States Courts website.  *See* https://www.uscourts.gov/statistics-reports/analysis-reports/civil-justice-reform-act-report.

believes mistreated her in the prior case.  The judicial system is not designed to give litigants multiple bites at the apple or to allow litigants to gain relief through bullying and harassment.

Both the federal and state defendants have filed motions to dismiss. Doc. 10; doc. 36.  The federal defendants contend that dismissal is appropriate because this court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), improper venue, Fed. R. Civ. P. 12(b)(3), and failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6).  Doc. 10.  The state defendants echo the arguments on lack of personal jurisdiction and improper venue.  Doc. 36.  For the following several reasons, which should be all too familiar to Jaye, the Court recommends that the motions to dismiss be **GRANTED**.  Doc. 10; doc. 36. Alternatively, the Court recommends *sua sponte* **DISMISSAL WITH PREJUDICE**, as this Court lacks jurisdiction and is an improper venue and the Complaint is a transparently frivolous shotgun pleading.

### A. Jurisdiction and Venue

None of the conduct alleged in the Complaint occurred in the Southern District of Georgia and, beyond citations to 28 U.S.C. §§ 1331,

1332, and 1391(b)(3), no argument is made for the Court's personal jurisdiction over the defendants or the appropriateness of venue.[26]   A complaint is subject to dismissal if the Court lacks personal jurisdiction over the defendants.   Fed. R. Civ. P. 12(b)(2).   The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."   *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).   "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."   *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).   Except where jurisdiction over the defendant is based on a forum nexus (such as domicile), personal jurisdiction is determined through a two-step inquiry: "[T]he exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363–64 (11th Cir. 2021).   In this instance, the Court need not

---

[26] Jaye has indicated on the Complaint Cover Sheet that she and some of the defendants are citizens of this state—Georgia.  Doc. 1-1 at 1.  As it appears that Jaye is a citizen of New Jersey, the Court will presume that this was answered in error.

consider Georgia's long-arm statue, because due process will not allow for the exercise of personal jurisdiction over any defendant.

"Due process requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1354 (11th Cir. 2021). When determining whether minimum contacts exist, the Court considers "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation omitted). As the Supreme Court has recently reiterated, "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts with the forum.'" *Ford Motor Co. v. Montana Eighth Judicial District Court*, — U.S. —, 141 S. Ct. 1017, 1025 (2021) (quoting with alterations *Daimler AG v. Bauman*, 571 U.S. 117,127 (2014)). Of the named defendants, the only connections to the Southern District of Georgia appear to be the normal operations of the United States Attorney's Office and the potential appearance of Ballard Spahr attorneys in other cases. Even if these tenuous connections were sufficient to establish a general connection to

this forum, the facts and allegations underlying the complaint have no relationship to this district.

The lack of personal jurisdiction is a waivable defense and the Court may not dismiss a case for lack of personal jurisdiction without giving the parties an opportunity to present their views on the issue. *Lipofsky v. New York State Workers Compensation Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988). The federal employee defendants represented by the United States Attorney's Office have raised the lack of personal jurisdiction in their motion to dismiss. Doc. 10 at 8–10. In response, Jaye chose to challenge the authority of the United States Attorney to file their motion, rather than to address the asserted grounds for dismissal. *See* doc. 14. The Court finds that the parties have had an adequate opportunity to be heard on personal jurisdiction as it relates to the federal defendants. Therefore, the claims against Barr, Garland, Harris, Kulger, Shunck, Walsh, Wilkinson Williams, and Wolfson should be **DISMISSED** for lack of personal jurisdiction.[27]

---

[27] The State defendants and Ballard Spahr also raised a lack of personal jurisdiction in their motion to dismiss. Doc. 36 at 3–5. As Jaye has not had the full period of time to respond to the motion provided by the local rules, the Court makes no finding, at this time, on personal jurisdiction as it relates to those defendants. S.D. Ga L.R. 7.5 (providing 14 days to respond to motions).

Moreover, the Southern District of Georgia is an improper venue for any of Jaye's claims. "A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Jaye has not alleged that a "substantial part" of the conduct underlying her claims occurred in this district. In fact, it does not appear that the alleged conduct has any connection to this district. Similarly, none of the named defendants are domiciled in the Southern District of Georgia. The only discernable presence of any party even within this state is an office of Ballard Spahr in Atlanta, located in the Northern District of Georgia. 28 U.S.C. § 90(a).

Where venue is inappropriate the district court may dismiss or transfer a case. 28 U.S.C. § 1406(a). "When venue would be proper in another district under § 1391, transfer is preferred over dismissal unless

there is evidence that a case was brought in an improper venue in bad faith or in an effort to harass a defendant." *Palmer v. Dau*, 2010 WL 2740075, at \*2 (M.D. Fla. Jul. 12, 2010).  As Jaye has shown a willingness to forum shop in the hope of finding a sympathetic court, there is little doubt that this case was brought to this district in bad faith.  As such, the Court **RECOMMENDS** that it be **DISMISSED**.

### B. Frivolity

During the early stages of a case, *pro se* litigants are afforded a liberal reading of their complaints, in which allegations are presumed to be true.  *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) (*per curiam*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").   However, the Court need not stretch the bounds of credibility beyond what is reasonable.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting) ("The sole exception to this rule [that a court must accept a complaint's allegations as true] lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.").  "[D]istrict courts have the inherent power to *sua sponte*

dismiss frivolous suits without giving notice to the parties." *Davis v. Kvalheim,* 261 F. App'x 231, 234 (11th Cir. 2008). A complaint is frivolous where it "lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Put differently, a claim is frivolous "when it appears the plaintiff has little or no chance of success." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (*per curiam*) (citations omitted).

That is the case before the Court, where Jaye alleges that the defendants—a collection of state and federal judges and prosecutors, court staff, and a private law firm separated geographically by a thousand miles—are "working in concert, in a conspiracy and deliberately to deprive her access to any court where any remedies to any injuries can be obtained." Doc. 1 at 13; *see also Gallop v. Cheney*, 642 F.3d 364, 366, 368–69 (2d Cir. 2011) (upholding district court's *sua sponte* dismissal of complaint alleging a conspiracy that senior U.S. government officials caused the September 11, 2001 attacks). Even straining factual credulity past its breaking point, Jaye's claims are legally frivolous. The essence of Jaye's claims are: (1) state and federal judges did not manage her prior cases or return judgments to her liking; (2) court clerks did not perform their jobs as she believes they should; (3) counsel appeared and

represented public employees without first justifying their authority to her; and (4) prosecutors did not take her allegations seriously. *See generally* doc. 1. These are not novel arguments in the context of Jaye's litigation history and she should not be surprised that they are no more viable before this Court than its sisters.

The largest portion of Jaye's complaint is dedicated to her allegations against state and federal judges. She alleges that they have deprived her of various rights through creating delays, not staying state court proceedings or invalidating state court judgments, dismissing her cases, and imposing restrictions and sanctions. Though Kugler and Williams are the primary targets of her allegations, she has repeatedly alleged misconduct by the judiciary as a whole, or at least every judge who has considered one of her many cases. *See, e.g.* doc. 1 at 4 ("It has been routine in the six federal cases of the Plaintiff for every federal judge to revise, alter and amend Plaintiff's pleadings to fit the narrative that serves their purpose.").

Jaye's claims against judges are dead on arrival. Firstly, this Court cannot sit in review of the decisions of state courts and other federal courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005) ("Congress had empowered only [the Supreme] Court to exercise appellate authority 'to reverse or modify' a state-court judgment." (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923))); *Daker v. Bryson*, 841 Fed. App'x 115, 124 (11th Cir. 2020) ("A district court cannot perform an appellate function by directly reviewing the decision of another district court." (citing *Roofing & Sheet Metal Servs. V. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 988 (11th Cir. 1982))).  Secondly, judges "are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity."  *Williams v. Alabama*, 425 F. App'x 824, 826 (11th Cir. 2011) (quoting *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000)).  That absolute judicial immunity "applies even when [a] judge's acts are in error, malicious, or were in excess of his or her jurisdiction."  *Bolin*, 225 F.3d at 1239.  Jaye's allegations against Judges Cassidy, Ciarrocca, Kugler, Mega, Rabner, Wilkinson, Williams, and Wolfson all relate to their official function.  As such, claims against them are barred.

Judicial Immunity extends to Clerks of Court, though in a narrower ambit.  *See Scott v. Dixon*, 720 F.2d 1542, 1546–47 (11th Cir. 1983) (upholding dismissal on judicial immunity of court clerk accused of

conspiring with another individual to issue warrants); *see also Lundahl v. Zimmer*, 296 F.3d 936, 939–40 (10th Cir. 2002) (clerk of district court enjoyed absolute immunity from money damages for failures to enter default judgment). In this Circuit, court clerks have "absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages." *Hyland v. Kolhage*, 267 Fed. App'x 836, 843 (11th Cir. 2008) (citing Tarter *v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)). Furthermore, this Court has absolutely no supervisory authority over the Clerk of the Supreme Court. *See Marin v. Suter*, 956 F.2d 339, 340 (D.C. Cir. 1992) ("We are aware of no authority for the proposition that a lower court may compel the Clerk of the Supreme Court to take any action.").

Jaye alleges that Harris, in his capacity as Clerk of the United States Supreme Court, "directed petitions, motions, letters and applications be rejected and returned." Doc. 1 at 9 & 13. She alleges that Walsh was directed by Kugler to not issue subpoenas and to revise her filings.[28] *Id.* at 5. All of the alleged acts fall within the duties of a clerk

---

[28] Jaye alleges that in *Jaye v. Shipp, et al.*, CV1:17-5257 (D.N.J. Jul. 18, 2017),

of court and are covered by immunity, particularly those allegedly directed by a judge.  Therefore, claims against Harris and Walsh are also barred by judicial immunity.

Jaye's claims against Shunck and Ballard Spahr are derived from her belief that they did not have the authority to represent government defendants in her previous litigation.  Absent such authority, their advocacy, including the filing of responsive pleadings and dispositive motions, she contends was unlawful.  Even if she has standing to bring a civil suit based on these allegations, such suit would be precluded by the defendants' immunity as government attorneys.

The "Supreme Court has extended absolute immunity to various participants in the judicial process, whose duties are deemed vital to the administration of justice." *Moore v. Schlesinger*, 150 F.Supp.2d 1308, 1311 (M.D. Fla. 2001).  This includes government attorneys defending

---

"Kugler directed Walsh to revise her R. 15 filing to be one that was a motion when it was not a motion.  He then denied the motion." Doc. 1 at 5.  On review of the docket in *Jaye v. Shipp*, the Court is unclear to which filing she refers.  As a motion to dismiss was filed on August 25, 2017, the latest date that Jaye might amend her Complaint without party consent or leave of the Court was September 15, 2017.  Fed. R. Civ. P. 15(a)(1)(B).  It does not appear that anything filed to the docket before that date was construed by the Court as a motion to amend.  The only motion to amend on the docket was clearly labeled as such and was filed after the case closed.  *Jaye v. Shipp, et al.*, CV1:17-5257, doc. 138 (D.N.J. Jun. 4, 2019).

government employees in civil suits.  As one court has noted, government

defense counsel "functions in an adversarial arena where there is, if not

always a winner, at least one loser and since he is charged with a public

trust he should not be inhibited in the faithful performance of his duties

by the threat of harassing lawsuits against him.  His function as a

government advocate therefore entitles him to absolute immunity, which

is necessary to assure that . . . advocates . . . can perform their respective

functions without harassment or intimidation." *Barrett v. United States*,

798 F.2d 565, 573 (2d Cir. 1986).  Though the Eleventh Circuit has not

spoken on the point, several of its sister circuits have found that

immunity extends to public attorneys serving in this role.  *See, e.g.*,

*McConnell v. King*, 42 F.3d 471, 472 (8th Cir. 1994) (recognizing that

"assistant attorneys general were absolutely immune from claims related

to their advocacy functions in defending state officers in civil rights suits"

(internal citation omitted)); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir.

1991) ("If the government attorney is performing acts 'intimately

associated with the judicial phase' of the litigation, that attorney is

entitled to absolute immunity from damage liability."); *Pryzina v. Ley*,

813 F.2d 821, 823 (7th Cir. 1987) (recognizing that "[t]he Attorney

General and his assistant also enjoy absolute immunity" in a civil tax matter); *Barrett*, 798 F.2d at 573 (upholding state attorneys claim of absolute immunity for work defending the state of New York in a civil suit).

Though Jaye seems to disagree, United States Attorneys are required by law to defend federal judges and other employees.  *See* 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); 28 U.S.C. § 2679 ("The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury."); *see also Christensen v. Ward*, 916 F.2d 1462, 1484 (10th Cir 1990) ("United States Attorneys . . . have statutory authority to represent federal judges, officers and agencies in actions brought against them as individuals").  They are also authorized to defend government employees sued in their individual capacities.  *See* 28 C.F.R. § 50.15 (authorizing Department of Justice attorneys and private counsel to represent government officials and employees sued,

subpoenaed, or charged in their individual capacity).  The Department of Justice may also retain private counsel to represent judges and other government employees.  *Id.*  As retained private counsel performs a job on behalf of the government for which a government employee would be entitled to immunity, they are also afforded the protection.  *See Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012) (finding that a private attorney retained by a city to assist in official investigations was entitled to qualified immunity).  As the conduct challenged by Jaye relates to the representation of government officials and employees, Shunck and Ballard Spahr are entitled to qualified immunity.

Jaye's remaining claims against United States Attorneys General Barr, Wilkinson, and Garland and New Jersey Attorney General Grewal are based on her belief that they acted unlawfully in not instigating a criminal investigation or prosecution against the other defendants.  As a private citizen, Jaye has no "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987); *Weaver v. Mateer and Harbert, P.A.*, 523 Fed. App'x 565, 568 (11th Cir. 2013) ("[W]e have explicitly rejected a private

citizen's interest in the prosecution of another."). "[T]he Government retains 'broad discretion' as to whom to prosecute," and therefore, the decision whether to pursue criminal charges rests almost entirely within a prosecutor's discretion." *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see also Piskanin v. John Doe*, 349 F.App'x 689, 691 (3d Cir. 2009) ("While 28 U.S.C. § 535 provides that the FBI 'may investigate any violations of Federal criminal law involving Government officers and employees,' the decision to initiate an investigation is within the FBI's discretion."). Therefore, Jaye cannot sue prosecutors for exercising their discretion in whether to being criminal investigations. As all of Jaye's claims lack a basis in fact and law, she has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). The claims should be **DISMISSED** as frivolous.

### C. Shotgun Pleadings

Jaye's Complaint also warrants dismissal as a shotgun pleading. Though the Court "construe[s] *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys," it has "little tolerance for shotgun pleadings." *Arringron v. Green*, 757 Fed. App'x 796, 797 (11th Cir. 2018) (internal citations omitted). Such pleadings fail to

adhere to the requirements of the Federal Rules designed to ensure that a defending party is provided enough clarity to adequately respond and have been a point of admonishment and criticism in this Circuit for decades. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 & n. 9 (11th Cir. 2015) (collecting cases). A typical shotgun pleading takes one of four forms:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a pleading that does not separate into a different count each cause of action or claim for relief; and (4) a pleading that asserts multiple claims against multiple defendants without specifying which defendant allegedly committed which claim.

*Adams v. Huntsville Hosp.*, 819 Fed. App'x 836, 838 (11th Cir. 2020) (citing *Weiland*, 792 F.3d at 1321–23).

The substantive portions of Jaye's Complaint are divided into two sections "Background" and "Statement of the Case." Doc. 1. Both sections are collections of conclusory statements and scattered legal arguments, devoid of relevant citation to law. *See, e.g.*, doc. 1 at 4 ("For nearly a decade, one void order after the next has been issued against [plaintiff] as part of a campaign of retaliation. Not one federal judge has yet to apply any controlling law to put this illegality and lawlessness in

check.  Plaintiff's rights to her remedies have been repeatedly denied by *ad hoc*, lawless orders of federal judges furthering the fraud of state judges."); *id.* at 4–5 (alleging without support that federal judges facilitate a scheme of theft by state judges); *id.* at 6 ("It is an illegal routine of federal judges for challenges to state statutes to be avoided entirely."); *id.* at 9 ("Every federal judge involved in all seven federal case[s] (one being a request for a removal) failed to apply state law. Judicial economy was never considered and piecemeal litigation was caused.").  Jaye then attempted to incorporate these allegations into her causes of actions, without any indication as to how they support her claims.  She also failed to articulate how each cause was relevant to each defendant; instead, simply noting that they were made against "all defendants."[29]  *Id.* at 14–16. As the Complaint is replete with conclusory allegations and immaterial facts and does not specify the nature of the claims against each defendant, it should be **DISMISSED** as a shotgun

---

[29] Count One purports to bring claims under 42 U.S.C. §§ 1983–88. These are distinct statutory causes of action that must be developed separately.  Furthermore, they likely do not provide cause of action against each of the defendants. *See*, *e.g.*, 42 U.S.C. § 1983 (providing a cause of action against individuals operating under "color of state law," not federal actors); *but see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 404 U.S. 388 (1971) (recognizing a similar cause of action to § 1983 for defendants acting under the color of federal authority).

pleading. *Arrington*, 757 F. App'x at 798.

## III.   Pending Motions

Though there are multiple grounds warranting the dismissal of this case, based on Jaye's litigious history, the Court feels it is appropriate to give express consideration to each of the pending motions in this matter. For the below discussed reasons, Jaye's motions for electronic filing access, doc. 5, motion for a writ of federal investigation, doc. 13, motion for disqualification of counsel, doc. 14, and motion for recusal, doc. 19, are **DENIED**.  Her motion to amend is **GRANTED**.  Doc. 8.  Defendants' motion to require service through counsel and to redact the personal addresses of individual parties is **GRANTED**.   Doc. 29.   The Court further **RECOMMENDS** that her motions for injunctive relief, doc. 6; doc. 7, be **DENIED** and that Defendants' motion to strike the Amended Complaint, doc. 21, be **GRANTED** by the district judge.[30]

Defendants have also filed a motion seeking a pre-filing injunction against Jaye in the form of that imposed by the District of New Jersey.

---

[30] Defendants have also filed a motion seeking an order the Jaye serve state defendants through counsel and redact personal information from filings.  Doc. 29. The deadline from Jaye to respond to this motion has not passed.  The Court will consider the motion once it is ripe.

Doc. 36.  The Court agrees that such a measure is needed to dissuade further abuse of the judicial process, but declines to adopt the specific restrictions recommended.  For the reasons discussed below, *see supra* §IV, the motion for pre-filing injunction is **GRANTED, in part,** and **DENIED, in part.**

### A. Motion for Electronic Filing Access

Jaye has filed a motion seeking authorization to file documents electronically in this case.  Doc. 5.  She asserts that such authorization is appropriate because of a "long history of documents not being sent to [her] and [her] filings not being docketed."  *Id.*  Jaye also acknowledges that she can access filings through the Public Access to Court Electronic Records (PACER) system.  *Id.*

Authorization for use the Court's Case Management and Electronic Case Filing (CM/ECF) system by a *pro se* plaintiff is sparingly granted.  *See Blochowicz v. Wilkie*, 2020 WL 5028224, at * 1 (S.D. Ga. Aug. 25, 2020) (Hall, C.J.) ("It is the Southern District of Georgia's policy not to allow *pro se* litigants to utilize electronic filing." (internal quotation marks and citation omitted)).  Jaye's assertion that during her long litigation history documents have occasionally not been properly

docketed or sent is not a compelling reason to grant electronic filing privileges. This is particularly the case where her pattern of repetitive and frivolous filings has led other courts to deny her the privilege. *See, e.g., Jaye v. Oak Knoll Vill. Condo. Assoc.*, No.1:18-2187 (3d. Cir. Aug. 2, 2018) (terminating electronic filing privileges for repetitive and frivolous filings); *Jaye v. Barr, et al.*, CV1:19-121, doc. 3 (N.D. Iowa Nov. 5, 2019) (denying motion for electronic filing permission as moot and directing filing via email). Jaye may prosecute her lawsuit via the U.S. Mail and by accessing public filings through PACER. Therefore, her motion for electronic filing access is **DENIED**. Doc. 5; *see McMahon v. Clevland Clinic Foundation Police Dep't*, 455 F. App'x. 874, 878 (11th Cir. 2011) (upholding district court denial of electronic filing permission).

### B. Motions for Injunctive Relief

Jaye has filed two motions seeking to enjoin New Jersey state judges. Doc. 6; doc. 7. The first motion seeks to void orders issued by the state court.[31] Doc. 6. The second motion requests the Court to "stay all

---

[31] Jaye refers to these orders as "void orders." *See* doc. 6. There is no indication that these orders have been adjudged void or inoperative by any judicial body. It is presumed that Jaye's use of the word "void" relates to her belief that the orders are unlawful.

state cases and enjoin state judges from acting against her."[32]  Doc. 7 at 11.

As with her other pleadings, the motions for injunctive relief are based on the perception that state court rulings and orders that run adverse to her desires and interests are inherently unlawful and part of a conspiracy of harassment.   Her motions are supported almost exclusively through conclusory allegations.  *See, e.g.*, doc. 6 at 1 ("An injunction is needed and has been needed for years."); *id.* at 3 ("State judges not only cause void orders by their illegal acts, but guarantee there is never a remedy after the fact.")  In the case of the second motion, a significant portion of accusations are targeted at a New Jersey state judge that was at the time not a named defendant in this case.[33]  Doc. 7 at 3–9.

Jaye has moved for injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651, which does not require many of the elements of the more common Rule 65 injunction.  *Klay v. United Healthgroup, Inc.*, 376

---

[32] Both motions also seek an award of monetary damages, which is not available through a grant of injunctive relief.  Doc. 6 at 7; doc. 7 at 8.

[33] Jaye has attempted the add Dupuis as a defendant through her Amended Complaint.  Doc. 21 at 3.

F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified under the Act, is grounded in entirely separate concerns.").   The Supreme Court has held that "injunctive relief under the All Writs Act is to be used sparingly and only in the most critical and exigent circumstances." *Brown v. Gilmore*, 533 U.S. 1, 2 (2001) (internal quotes omitted).   "Such an injunction is appropriate only if the legal rights at issue are indisputably clear." *Id*. (internal quotes omitted).   Despite Jaye's confidence in her position which has already been litigated before multiple courts, the rights at issue and any alleged violation or deprivation are far from "indisputably clear."

The ability of the federal courts to enjoin proceedings in state courts is also limited by the Anti-Injunction Act, which bars enjoining state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."   28 U.S.C. § 2283.   The Supreme Court has directed that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state

courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Jaye has not pointed to any express Congressional authorization for the Court to enjoin the New Jersey state courts, nor has she argued that an injunction is necessary to aid the Court's jurisdiction or to effectuate its judgments. Therefore, the motions for injunctive relief should be **DENIED**.

### C. Motion to Amend

Jaye's original complaint included 100 fictitious entities (John Does) among the listed defendants. Doc. 1 at 2. Shortly after filing, she filed a motion to amend her complaint in order to identify four of the John Does. Doc. 8. She later withdrew the motion with the understanding that a formal motion to amend was not necessary to identify previously unidentified defendants. Doc. 12. Admittedly, the Federal Rules of Civil Procedure and Local Rules of this Court provide no guidance as to how a named fictitious entity should be identified. As replacing a fictitious party with a named defendant in effect constitutes a change in the party sued, amendment is certainly the appropriate mechanism. *See Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 468 (2d Cir. 1995) (recognizing

that the naming of fictious litigants cannot operate as a tool for circumventing statutes of limitation "because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."). As Jaye's motion to withdraw was based on a reasonable misunderstanding, the Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY TERMINATE** the motion to withdraw. Doc. 12. As plaintiff is entitled to amend her complaint once as a matter of course, the motion to amend is **GRANTED**. Doc. 8; Fed. R. Civ. P. 15(a)(1).

In April 2021, Jaye filed an Amended Complaint. Doc. 21. The Amended Complaint seeks to add dozens of additional parties, increasing the number of named defendants to 92.[34] *Id*. at 1–4. These defendants are predominantly federal, state, and county level judges, elected officials, and other public employees. *Id*. The federal defendants moved to strike the amended complaint, alleging that plaintiff failed to request and receive leave to amend. Doc. 28. Jaye has not filed a response to this motion.

---

[34] As the Amended Complaint retains the inclusion of 100 fictitious defendants and the majority of the newly named parties have no apparent connection to the underlying facts alleged in the original complaint, the Court does not consider the naming of these defendants to be the identification of the original John Does.

Federal Rule of Civil Procedure 15 permits a single opportunity for a plaintiff to amend as a matter of course.  Fed. R. Civ. P. 15(a)(1).  Such amendment must be made within 21 days of the filing of a responsive pleading or a dispositive motion under Rules 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1)(B).  A motion to dismiss was filed in this case on February 18, 2021.  Doc. 10.  Jaye's Amended Complaint was filed on April 9, 2021, 50 days later.  Doc. 21.  Therefore, the Amended Complaint cannot be filed absent consent from the opposing parties or leave of the Court.  Fed. R. Civ. P 15(a)(2).

The Federal Rules imposes on the Court an obligation to freely grant leave to amend.  Fed. R. Civ. P 15(a)(2).  "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Despite the legion of new names to be added to the case caption, no specific allegations are raised against most of the new parties and those arguments asserted

have been rejected by multiple other courts.   The amendments are primarily allegations of criminality supported only by conclusory assertions and the slimmest connection to civil liability.   For example, Jaye dedicates multiple pages of her Amended Complaint to reciting admissions by various defendants of their purported wrongdoings, but no point does she provide any details of the admissions or underlying acts. *See* doc. 21 at 8–10.   Furthermore, even if a potentially viable claim were hidden within the amendments, Jaye has failed to establish any connection between this district and the named defendants or challenged conduct.   *See* 28 U.S.C. § 1406 (district courts may dismiss or transfer cases suffering venue defects).   As Jaye failed to seek leave before filing her Amended Complaint and the complaint is patently futile, defendants' motion to strike should be **GRANTED**.   Doc. 28.

### D. Motion for Writ of Federal Intervention

Jaye has filed what she titles "18 U.S. Code § 1968. Civil investigative demand (Supplementing Motion for Writ and Federal Intervention." Doc. 13.   The filing was addressed to the Eastern District of Texas. *Id*. at 1.   As discussed previously, private citizens are simply not permitted to initiate a criminal investigation or prosecution through

a civil case in federal courts. *See supra*, p. 41–42 (discussing efforts by private citizens to instigate criminal proceedings).    Furthermore, the Court is also without authority to order the United States Attorney to initiate a prosecution. *See Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system.").   Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches.  *See id.* at 379–80 (quotations and citation omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in

a particular case.").  To the extent that this motion was not filed in this Court in error, it is **DENIED**.  Doc. 13.

### E. Motion for Disqualification of Counsel

In response to defendants' motions to dismiss and stay discovery, Jaye filed what she titles as a "Challenge of Authority to File for 'Defendants' by AUSA Bradford Patrick" in which she argues that the United States Attorney was not authorized to file on behalf of the defendants.   Doc. 14.   She also makes general allegations of prior inappropriate conduct by government attorneys.   *Id*.   Defendants construed Jaye's filing as a motion to disqualify and filed a timely response.  Doc. 15.  The Court agrees that the only mechanism through which Jaye might challenge the ability of counsel to represent an opposing party is a motion for disqualification and, accordingly, construes the motion as such.

The only legal authority identified by Jaye in support of her position is *Tanzin v. Tanvir*.   Doc. 32 at 3.   In *Tanzin*, the Supreme Court held that the express remedies provision of the Religious Freedom Restoration Act of 1993 allowed for suits to be brought against government officials in their individual capacities.  *Tanzin v. Tanvir*, — U.S. —, 141 S. Ct. 486

(2020).   Though the opinion reaffirmed the availability of individual liability under the 42 U.S.C. § 1983, it did not consider the ability of government attorneys to represent officials and employees when sued in their individual capacities.  *Id.* at 490–91.  In fact, Department of Justice Attorneys appeared and represented the government employee petitioners in the case.

Department of Justice attorneys and private counsel furnished by the Department of Justice can represent government employees sued in their individual capacity.  28 C.F.R. § 50.15.  Such representation is available when the suit relates to actions that "reasonably appear to have been performed within the scope of the employee's employment."  28 C.F.R. § 50.15(a).  The Department of Justice has discretion regarding whether to provide representation to a government employee and has exercised that authority for two centuries.  *See Falkowski v. Equal Employment Opportunity Comm'n*, 783 F.2d 252, 253 (D.C. Cir. 1986) (observing the discretion of the Attorney General to provide representation and that such authority has been exercised since 1821).

No statute or rule requires an attorney providing representation to a government employee, or any other litigant, to provide certification of

their authority beyond a notice of appearance.  Pursuant to this Court's Local Rules, an attorney is deemed to have appeared through the filing of any pleading.  S.D. Ga. L. Civ. R. 83.6(a).  The Court has no oversight as to the internal authorization procedures of the Department of Justice, but, to the extent that the Court might need to be satisfied with the United States Attorney's compliance with 28 C.F.R. § 50.15(a), AUSA Patrick has provided adequate assurance.  Doc. 15 at 3.  Any further concern regarding the authority of counsel to represent a party is for the attorney and purported client to raise, not the opposing party that has no interest in the attorney-client relationship.  Therefore, Jaye's motion to disqualify is **DENIED**.  Doc. 14.

### F. Motion for Recusal

Jaye has filed a motion seeking the recusal of the undersigned.[35]  Doc.

---

[35] In previous cases, Jaye has asserted that a federal judge is precluded from considering a case in which a motion for his recusal is pending.  *See, e.g. Jaye v. Shipp, et al.*, CV1:17-5257, doc. 134 (D.N.J. Jun 27, 2018) (motion to vacate orders).  This is not correct.  No federal law or policy requires a case to be stayed or transferred to another judge simply because a motion to recuse has been filed.  *But see* 28 U.S.C. § 144 (making mandatory recusal if a party submits a *sufficient affidavit* alleging "facts that would convince a reasonable person that bias actually exists." (quoting *Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000))).  Such a practice is not only illogical where the challenged judge is the one to determine the motion but also impractical, as it would incentivize litigants wanting to slow or complicate a case to file meritless recusal motions.

19.  The crux of her argument is that the Court's decision not to prioritize this matter over the other cases on its docket and dispose of her motions on a more rapid schedule evidences bias, discrimination, and complicity in a conspiracy.  *Id*.  Two federal statutes govern judicial disqualification. The first, 28 U.S.C. § 144, only applies when "a party . . . makes and files a timely and sufficient affidavit . . . ."  Since no such affidavit has been filed, it does not apply here.  The second, 28 U.S.C. § 455, "places a judge under a self-enforcing obligation to recuse himself where the proper legal grounds exist."  *United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir. 1987), *superseded by statute on other grounds as recognized by J.W. by and through Tammy Williams v. Birmingham Bd. of Ed.*, 904 F.3d 1248, 1254 (11th Cir. 2018).  As none of the grounds for mandatory disqualification enumerated under § 455(b) are applicable in this case, the only remaining justification for disqualification is if my "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  This requires consideration of whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting

*Parker v. Connors Steel, Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988), *cert. denied*, 540 U.S. 1149 (2004)).  As Plaintiff has articulated no grounds for questioning the impartiality of the Court beyond her boredom with what she perceives to be a sideshow and a dissatisfaction with the pace of her case, recusal is not warranted and the motion is, therefore, **DENIED**. Doc. 19.

### G. Motion to Require Service through Counsel and to Redact Defendants' Personal Addresses

New Jersey state defendants have filed a motion seeking an order directing plaintiff to serve pleadings through counsel and to redact the personal addresses of defendants from filings.  Doc. 29.  Once an attorney has appeared on behalf of a party, service "*must* be made on the attorney unless the court orders service on the party."  Fed. R. Civ. P. 5(b)(1) (emphasis added).   Counsel has appeared on behalf off all named defendants.   Doc. 10 (motion filed on behalf of federal defendants constituting appearance of Bradford Patrick); doc. 17 (notice of appearance on behalf of Ballard Spahr and New Jersey defendants by Christine Rita Emello); *see also* S.D. Ga. L.R. 83.6 ("The filing of any pleadings shall, unless otherwise specified, constitute an appearance by

the person who signs such pleading."). Therefore, Jaye must serve all pleadings through counsel and not on the individual defendants.

Though there is a presumption of openness in the Court's docket, the Federal Rules of Civil Procedure recognize that redaction of personal information is appropriate upon a showing of goof cause. Fed. R. Civ. P. 5.2(e). In determining if good cause exists for redacting information, the Court must "balanc[e] the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc*, 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001)).

Defendants argue that Jaye's prior conduct in other cases, including the use of "thinly veiled threats," amounts to good cause for redaction. Doc. 29 at 5–6. The Court agrees. Redacting defendants' personal addresses creates no prejudice to Jaye and promoting the safety of all parties outweighs any negligible interest that the public might have in such information. Therefore, redaction is appropriate and the motion is **GRANTED**. Doc. 29.

## IV.   Sanctions and Filing Restrictions

Jaye's use of the courts can only be described as abusive.  As one Judge has observed she "does not view [her] case[s] as an opportunity to resolve a legitimate dispute or to vindicate her rights.  Instead, Jaye has elected to use [them] as a forum to voice her protests against imagined corruption in the state and federal judicial systems while insulting everyone entangled in her myriad proceedings."  *Jaye v. Barr, et al.*, CV1:19-121, Doc. 193, at 11 (N.D. Iowa. Mar. 25, 2021)  Another Court has opined that her "repeated attempts to create a new controversy by suing a presiding judge, or by attempting to make an appellate issue out of long-settled law, or by reigniting an old controversy by wantonly disregarding past judgments, appear . . . to be vexatious and, indeed, repetitive.  [She] is not entitled to convert the judicial system into a means for harassment.  If she wants for a hobby, the filing of lawsuits will not do."  *Jaye v. Shipp, et al.*, CV1:17-5257, doc. 118 (D.N.J. Mar. 29, 2018).  She has filed dozens of cases against hundreds of defendants,[36]

---

[36] A survey of her federal cases reveals 200 distinct defendants, including approximately sixty state and federal judges, various public officials, and more than a dozen law firms and attorneys that committed the grave sin of representing opposing parties.

with each adverse ruling prompting the next filing and fueling her self-centered delusion of victimhood.   Having seemingly exhausted her options in the state and federal courts of New Jersey, she has begun to forum shop in other federal districts, presumably trying to avoid filing restrictions or in search of a more accommodating jurist.

Beyond her prodigious filing, Jaye has prosecuted her multitudinous cases in a vexatious and abuse manner.  In past cases, she has filed a deluge of repetitive and transparently frivolous documents, often in the form of letters expressing perceived grievances, rather than motions seeking relief.  *See, e.g.*, *Jaye v. Barr*, CV1:19-121, doc. 193 at 12 (N.D. Iowa Mar. 25, 2021) (order) (recognizing that the case's "docket contains nearly two hundred entries and a long list of meritless abusive filings.").  Though this case is in its infancy, her bad habits are already on display.  *See*, *e.g.*, doc. 16 ('Letter re: Judiciary's Routine of Case-Rigging and Deprivation of Due Process (FYI)"); doc. 23 (letter titled "Service," complaining of case management and inviting the magistrate judge or chief judge to "sabotage the case now").

It is not only the volume of Jaye's files, but also the content, which is often inappropriate, profane, and threatening.  She routinely demeans

and insults the judges involved in her cases.  *See, e.g.*, doc. 32 at 4 (referring to New Jersey judges as "filthy communist/Nazis"); *see also Jaye v. Barr*, CV1:19-121, doc. 46 at 1 (N.D. Iowa May 14, 2020) (letter to Court) (referring to New Jersey Superior Court Judge as "bitch" and complaining of "[t]welve years of the same bullshit, lies, and theft by judges"); *id.*, doc. 91 at 1 (response to order to show cause) (comparing judges to Nazi dictators and Orwellian "big brother"); *In re Jaye*, MC1:20-086, doc. 1; doc. 2 (D.N.J. May 20, 2020) (letters to Court) (referring to New Jersey Superior Court Judges as "endlessly useless" and lunatics); *Jaye v. United States*, No: 19-1458, doc. 14 at 4 (Fed. Cir. Apr. 2, 2019) (referring to New Jersey Superior Court judges as a morons and idiots); *Jaye v. Oak Knoll Vill. Condo.,* No. 18-2187 (3d. Cir. Jun. 11, 2018) (motion for judicial notice) ("If these jackasses (and I apologize to jackasses as animals as they actually perform a function unlike the judges involved in my federal cases) . . .").  In one instance, she chastised a federal judge, unconnected to her cases, for publicly speaking about the murder of the Judge's child.  *Jaye v. Barr, et al.*, CV1:19-121, doc. 110 (N.D. Iowa Sep. 1, 2020) (demeaning the emotional response of a federal judge in the days following her son's murder as "tacky").  She has also

accused judges of immoral and illegal behavior without evidence. *See, e.g.*, *Jaye v. Grewal, et al.*, CV6:21-049, doc. 13 at 1 (E.D. Tex. Mar. 17, 2021) (demand for order denying review for appeal to Fifth Circuit) ("As is routine in cases in which judges use the public courts for their own cover-ups, benefits and purposes in place of the law . . ."); *In re Jaye*, MC1:20-086, doc. 1 (May 20, 2020) (letter to chief judge of district) (alleging multiple judges of illegal conduct and declaring that "one way or another, these people calling themselves judges are going to have to answer for sabotaging my cases in this court to deprive me of every remedy the law would have provided if access, due process, and equal protection were given in this court."); *Jaye v. Hoffman, et al.*, CV3:16-7771, doc. 117 (D.N.J. Apr. 26, 2018) (letter) (accusing judge of obstruction of justice).

Jaye's conduct is not limited only to judges, as attorneys, especially opposing counsel, are another favorite target. She has repeatedly filed baseless motions with the court challenging the ability of opposing counsel to appear and seeking to invalidate their filings.[37] *See, e.g., Jaye*

---

[37] The Court is unaware of any instance in which a defendant in one of Jaye's cases has advised that court that an attorney is fraudulently appearing on that defendant's behalf.

*v. Barr, et al.*, CH1:19-121, doc. 156 (N.D. Iowa Dec. 8, 2020) (letter) (objection to opposing counsel's ability to file documents); *Jaye v. Shipp, et al.*, CV1:17-5257, doc. 38 (D.N.J. Nov. 2, 2017) (letter) (alleging that counsel filed fraudulent notices of appearance and demanding that they provide proof of their authority to represent defendants); *Jaye v. Oak Knoll Condo. Owners Ass'n, et al.*, CV3:15-8324, doc. 26 (D.N.J. Jan. 21, 2016) (motion) (alleging that opposing counsel has fraudulently represented parties in five cases). She has at times sought sanctions against counsel for what she perceived to be the unauthorized representation of defendants. *See, e.g., Jaye v. Barr, et al.*, CV1:19-121, doc. 158 (N.D. Iowa Dec. 8, 2020) (letter) (requesting the court to order opposing counsel to show cause why their "misrepresentations and improper filings" should not warrant sanction). Her filings regularly include vulgar insults and threats toward opposing counsel. *See, e.g., Jaye v. Oak Knoll Vill. Condo. Ass'n,* No. 18-2187 (3d. Cir. Nov. 27, 2018) (suggestions of harm or death to counsel); *Jaye v. Oak Knoll Vill. Condo. Ass'n.*, CV1:17-2187 (3d Cir. Nov. 26, 2018) (comparing opposing counsel to a dirty child in wet diapers needing a "binky and cry in the corner" and claiming a deep desire for and dedication to seeing him in jail); *Jaye v.*

*Oak Knoll Condo. Owners Ass'n, et al.*, CV3:15-8324, doc. 26 (D.N.J. Jan. 21, 2016) (motion) (referring to counsel as "a menace to the legal profession" and "a thief with a law license").  In at least two instances, she has expressly drawn opposing counsel's children into her tirade.  *Jaye v. Oak Knoll Vill. Condo.,* No. 18-2187 (3d. Cir. Nov. 27, 2018) (email to counsel) (profanity laden email in response to a motion for sanctions, accused counsel of embezzlement and perjury, chastised counsel for not filing motions seeking relief, and specifically referenced counsel's children); *Jay v. Shipp, et al.*, CV1:17-5257, doc. 139 (D.N.J. Aug. 13, 2019) (letter) (mentioning the children by name and implying their association to a crime in a post-closing letter to a judge).

Jaye's profane, demeaning, and insulting language is inappropriate, but of greater concern are suggestions of violence and other threats.  A reading of Jaye's correspondences with various courts suggests that she is prone to conspiratorial thinking.  *See Jaye v. Grewal, et al.*, CV6:21-049, doc. 13 at 4 (E.D. Tex. Mar. 17, 2021) (demand for order denying review for appeal to Fifth Circuit) ("Cancel-culture and censorship are alive and well in the courts."); *Jaye v. Barr*, CV1:19-121, doc. 132 at 5 (N.D. Iowa Sep. 24, 2020) (letter requesting sanctions

against opposing counsel) ("And any moron lawyer can say a lie with absolute assurance. This is not difficult. In fact, the Democrats are infamous for it. Bill Clinton, Hillary Clinton, and Congressman Schiff are but three examples of LAWYERS looked into the camera and stated lies with no shame. It is standard operating procedures of lawyers which has now worked its way into the judiciary being done by so-called judges."); *id*. at 7 ("And the FACTS cannot be cleverly twisted in the same manner idiot Democrats call protestors who are looting, robbing and burning buildings as peaceful"); *Jaye v. United States*, No. 19-1458, doc. 15 at 5 (Fed. Cir. Apr. 2, 2019) (motion to reconsider denial of injunctive relief) ("This is all somewhat like the whole hoax with Russia and Trump by other government failures trying to push Trump out of his elected seat . . . except this is rigging in the judiciary. The DEEP STATE is alive and well in the courts . . . which have lost all credibility.").

She has also indicated an appreciation for individuals who have engaged in violent confrontations with the government and has suggested a willingness to engage in similar violence. For example, in her April 2020 letter to Judge Williams, Jaye highlighted three high-profile standoffs between government agencies and private citizens and

stated that she is "reaching a dangerous point of no return."  *Jaye v. Barr, et al.*, CV1:19-121, doc. 46 (May 15, 2020) (letter to court).  In the same letter, she wrote:

> Those involved are forcing me to take matters into my own hands.  I put this out there in advance of whatever actions I must take and whatever events that will follow.  And I put this out there so that if this ends up being a criminal matter, not one of you bastards can say you did not force me to act outside a court of law to uphold my rights.  If the day comes, I want a jury of my peers in a criminal case to see that I took every possible to step to prevent taking matters into my own hands.  This is not the route I wanted to go. This is the only route that you have left me.

*Id.*  In a motion to the Federal Circuit the prior year, she wrote:

> I do not know why it is [that] government workers require that citizens stand with weapons in the street or blow up buildings to draw attention to the tyrannical abuse of failures employed in government position.  But clearly, the pen is not mightier than the sword when it comes to rogue judge[s].
>
> And the longer I live—the more I understand why such drastic measures have been taken by the people against their government—and why in so many cases they are acquitted by their peers.  My hatred for my government goes stronger with every passing day—and for good reason.  All you judges do is lie.  And you rig the outcome of people's lives.  It is disgusting. The courts cannot be trusted—and people should really start taking action in their own hands

*Jaye v. United States*, No. 19-1458, doc. 14 at 9 (Fed. Cir. Apr. 2, 2019) (Motion to adjudicate my motion beyond "to the extent" and in accordance

to the law as required by the judges of this court).

Jaye has been repeatedly warned that her behavior was inappropriate and, if continued, would invite sanctions. *See Jaye v. Oak Knoll Vill. Condo. Owners, Ass'n., Inc.*, 751 F. App'x. 293, 300 (3d Cir. 2018) (reminding Jaye that "if she continues to submit repetitive and frivolous documents to the Court, the Court will issue an order to show cause why she should not be enjoined from filing, and that if she continues to make disparaging remarks against opposing parties, counsel, or judges or allegations of criminal behavior or other wrongdoing by persons involved in the litigation that are not supported by clear evidence, she will be subject to sanctions, including monetary fines.") (internal quotations omitted); *Jaye v. Oak Knoll Vill. Condo. Assoc.*, No.1:18-2187 (3d. Cir. Aug. 2, 2018) (warning that if "she continues to make disparaging remarks against opposing parties, counsel, or judges or allegations of criminal behavior or other wrongdoing by persons involved in the litigation that are not supported by clear evidence, she will be subject to sanctions, including monetary fines."); *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n*, CV1:15-8324, 2016 WL 7013468, at *6, n. 11 (D.N.J. Nov. 30, 2016) (warning of sanctions for continued "false

statements and reckless accusations of misconduct against Defendants in the face of clear evidence to the contrary are potential grounds for sanctions against Plaintiff"); *Jaye v. Attorney General New Jersey, et al.*, No. 16-2641 (3d Cir. Sep. 22, 2016) ("Finally, we emphatically warn Appellant that any further frivolous and/or duplicative filings in this appeal may result in sanctions."). These warning apparently failed to dissuade her conduct, leading multiple courts to deem Jaye an abusive and vexatious litigant and to impose sanctions or restrictions on her ability to bring future suits.

Sanctions against Jaye have taken several forms. In two cases, the District of New Jersey expressly directed defendants to not respond to her filings, unless directed to do so. *See Jaye v. Hoffman,* CV1:16-7771, doc. 116 (D.N.J. Apr. 9, 2018) (directing defendants that they need not respond to plaintiff's filings unless directed to do so); *Jaye v. Hoffman*, CV1:14-7471, doc. 92 (D.N.J. May 18, 2018) (same). The Third Circuit has revoked her ability to electronically file documents. *Jaye v. Oak Knoll Condo. Owners Ass'n., Inc.*, *et al.*, No. 18-2187 (3d Cir. Aug. 2, 2018). It has also imposed monetary sanctions. *Id.* (Aug. 1, 2009) (imposing a $1,000 monetary fine for Jaye's "failure to adhere to our prior

admonitions, and her continued, unwarranted attacks on opposing counsel, judges, and court staff"). The Northern District of Iowa has dismissed a case as a sanction for sending a letter to a federal judge that was deemed "threatening, insulting, vulgar, and unrelated to any pending issue." *Jaye v. Barr, et al.*, CV1:19-121, doc. 193 (N.D. Iowa. Mar. 25, 2021).

At least two courts have taken the more serious step of imposing restrictions on her ability to file. Upon dismissing her complaint as transparently frivolous and outside of the court's jurisdiction, the Court of Federal Claims directed that no further filing would be accepted from Jaye, absent authorization from the chief judge of the that court. *Jaye v. United States*, CV1:18-1200, doc. 9 (Ct. Fed. Cl. Dec. 21, 2018). The order was upheld on appeal. *Jaye v. United States*, No. 19-1458 (Fed. Cir. Aug. 6, 2019) *cert denied* 141 S. Ct. 1075 (2021). The District of New Jersey has also restricted her ability to file future suits derived from "the payment of her condominium fees, or foreclosure proceedings, or any perceived conspiracies emanating out of them." *Jaye v. Shipp*, CV1:17-5257 (D.N.J. May 18, 2018).

Unsurprisingly, warnings, sanctions, and restrictions have not

abated Jaye's conduct.  Within four months of being warned by the Third Circuit that continued bad behavior would warrant sanctions, opposing counsel filed a motion seeking sanctions based on her "vexatious recycling of rejected arguments and her baseless accusations of criminality." *Jaye v. Oak Knoll Condo. Owners Ass'n., Inc.*, *et al.*, No. 18-2187 (3d Cir. Nov. 26, 2018).  In response to defendants' motion, Jaye sent opposing counsel a threatening, insulting, and profanity laden email in which she accused him of criminal conduct and identified his children by name.  *Id.* (docket entry of Nov. 27, 2018).  She also continued to disparage and attack judges in her filings.  *See*, *id.* (docket entry of Jan. 16, 2019) (accusing judges of participating in a conspiracy and committing fraud); *id.* (docket entry of May 22, 2019) (referring to a federal judge as an "idiot" and "filth").  Less than two weeks after the Third Circuit imposed sanctions for, in part, her attacks on opposing counsel, she reiterated her attacks in another case, including explicit references to opposing counsel's children.  *Jaye v. Shipp, et al.*, CV1:17-5257, doc. 139 at 3–4 (D.N.J. Aug. 13, 2019) (letter).

Similarly, Jaye has repeatedly ignored restrictions on her ability to file.  *See e.g., In re: Jaye*, MC1:20-086 (D.N.J. May 20, 2020) (collecting

correspondences sent after the imposition of restrictions); *In re Jaye*, AF1:21-7021 (Ct. Fed. Cl. Mar. 26, 2021) (denying leave to file a complaint). Most recently, she has seemingly attempted to avoid restrictions by filing cases in distant courts. *See, Jaye v. Knuckles, Komosinski & Manfro, LLP et. al.*, CV1:21-3435 (S.D.N.Y. Apr. 19, 2021); *Jaye v. United States, et al.*, CV1:21-169 (D.R.I. Apr. 14, 2021); *Jaye v. Grewal, et al.*, CV6:21-048 (E.D. Tex. Jan. 28, 2021); *Jaye v. Barr, et. al.*, CV1:19-121 (N.D. Iowa Nov. 4, 20219); *Jaye v. United States*, CV1:18-1200 (Ct. Fed. Cl. Aug. 8, 2018). Several of these cases have, predictably, been dismissed or transferred for improper venue. *Jaye v. Knuckles, Komosinski & Manfro, LLP et. al.*, CV1:21-3435, doc. 8 (S.D.N.Y. May 5, 2021) (transferring case to the District of New Jersey for improper venue); *Jaye v. Grewal, et al.*, CV6:21-048 (E.D. Tex. Jan. 28, 2021) (transferring case to the District of New Jersey as a more appropriate venue).

This Court is skeptical that any restriction it might impose will meaningfully curtail Jaye's abusive practices. Regardless, this Court is no more inclined to tolerate abuse of the judicial process than its sisters. *See Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986)

("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.").  Jaye is clearly a vexatious litigant and restrictions are warranted to guard against her continued abuse of the judicial system and defendants.  Therefore, the Court recommends that the following sanctions be imposed in all pending and future civil cases filed by Jaye in this district.[38]

1. The Clerk of Court shall open a miscellaneous file into which all of Jaye's future filings shall be collected.  The presiding judge shall review the filings.  Only those complaints that allege a plausible claim for relief will be approved for filing.  All other cases will be dismissed *without any further judicial action* after 30 days from the date the complaint was received by the Clerk, unless the Court orders otherwise.

---

[38] The Court has imposed such restrictions on vexatious litigants in the past.  *See Drake v. 7-Eleven*, 2020 WL 4196189 (S.D. Ga. June 26, 2020) adopted by CV4:19-208, doc 9 (S.D. Ga. July 21, 2020);  *Drake v. Travelers Commercial Ins. Co.*, 2020 WL 3452485 (S.D. Ga. May 27, 2020) *adopted by* CV4:20-099, doc. 11 (S.D. Ga. June 24, 2020); *Oliver v. Lyft. Inc.*, CV4:19-063, doc. 113 (S.D. Ga Oct. Sept. 13, 2019) *adopted by Oliver v. Lyft*, 2019 WL 5390012 (S.D. Ga. Oct. 21, 2019); *Williams v. Darden*, 2016 WL 6139926 (S.D. Ga. Oct. 21, 2016); *Fields v. Terminal*, 2016 WL 823020 (S.D. Ga. Feb. 26, 2016);  *Hurt v. Zimmerman*, CV415-260, doc. 3 (S.D. Ga. Oct. 7, 2015); *Robbins v. Universal Music Grp.*, 2015 WL 171443 (S.D. Ga. Jan. 13, 2015); *Finch-Grant v. Long*, 2014 WL 3888124 (S.D. Ga. Aug. 6, 2014).

Thus, although the Court will read and consider any future complaint that Jaye endeavors to file, it will not necessarily enter an order addressing that complaint.  If no order is forthcoming, then 30 days after the complaint's receipt, the Clerk shall, without awaiting any further direction, notify Jaye that the case has been dismissed without prejudice.   The Clerk shall not docket any further motions or papers in that case except for a notice of appeal. If a notice of appeal is filed, the Clerk shall forward a copy of this Report and Recommendation, the order adopting, the notice of appeal, and the dismissed Complaint to the Court of Appeals.

2. To ensure that all of Jaye's future pleadings are properly consolidated for review, the Clerk shall personally advise each deputy clerk of the Court's ruling in this case and develop a procedure for ensuring that all of Jaye's future complaints are immediately assigned and forwarded to the presiding district judge in this case, regardless of which divisional clerk's office received and docketed the papers.

3. Jaye may file a motion to modify or rescind the order imposing these restrictions no earlier than two years from the date of its entry;

4. These filing restrictions do not apply to any criminal case in which Jaye is named as a defendant, or to any proper application for a writ of habeas corpus.

5. A copy of the order imposing these restrictions shall be forwarded to each judicial officer in this District.

## V.   Conclusion

In summary, the Court **RECOMMENDS** that defendants' motions to dismiss be **GRANTED**, doc. 10; doc. 36, or, in the alternative, that the Complaint be **DISMISSED** for lack of jurisdiction, improper venue, frivolity and as a shotgun pleading.  The Court also **RECOMMENDS** that plaintiff's motion for injunctive relief be **DENIED**, doc. 7, and defendants' motion to strike the proposed Amended Complaint be **GRANTED**, doc. 21.  Plaintiff's motion to amend her Complaint is **GRANTED**.  Doc. 8.  Her motions for electronic filing access, doc. 5, a writ of federal investigation, doc. 13, disqualification of counsel, doc. 14, and recusal, doc. 19, are **DENIED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may

file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 7th day of June, 2021.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA